**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
NIEASHA THOMAS, *individually and on*
*behalf of all others similarly situated,*

                    Plaintiff,

          -against-

MIDLAND CREDIT MANAGEMENT, INC.,

                    Defendants.
--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
2:17-cv-00523 (ADS)(ARL)

<u>**APPEARANCES:**</u>

**Barshay Sanders, PLLC**
*Attorneys for the Plaintiff*
100 Garden City Plaza
Suite 500
Garden City, NY 11530
          By:     David M. Barshay, Esq.,
                    Craig B. Sanders, Esq., Of Counsel

**Hinshaw & Culbertson LLP**
*Attorneys for the Defendant*
800 Third Avenue
13th Floor
New York, NY 10022
          By:     Dana Brett Briganti, Esq.,
                    Ellen Beth Silverman, Esq.,
                    Han Sheng Beh, Esq., Of Counsel

**SPATT, District Judge:**

The Plaintiff, Nieasha Thomas (the "Plaintiff") commenced this action against the

Defendant Midland Credit Management, Inc. ("MCM" or the "Defendant), alleging violations of

the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*

Presently before the Court is a motion to dismiss the complaint pursuant to Federal Rule

of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(6), or in the alternative, to compel

arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*. For the following

reasons, the Defendant's motion is granted in part, and denied in part.

## I.  BACKGROUND

### A.  The Relevant Facts

The Plaintiff, who is a New York resident, incurred a personal debt to Credit One Bank,

N.A., who is not a party to this action.  The Plaintiff fell behind on her debt payments.  At some

point, the debt was transferred to the Defendant.

On January 29, 2016, in an effort to collect the debt, the Defendant sent a letter to the

Plaintiff.  The letter gives the following relevant details:

| | | | |
|---|---|---|---|
| Original Creditor: | Credit One Bank, N.A. | Date of Letter: | 01-29-2016 |
| Original Account Number: | [redacted] | | |
| Charge-Off Date: | 11-06-2015 | Charge-Off Amount: | $633.56 |
| Last Payment Date: | 03-27-2015 | Post Charge-Off Interest Accrued: | $0.00 |
| Current Owner: | MIDLAND FUNDING LLC | Post Charge-Off Fees Accrued: | $0.00 |
| Current Servicer: | Midland Credit Management, Inc. | (Less) Payments and Credits: | $0.00 |
| MCM Account Number: | [redacted]9808 | Current Balance: | $633.56 |

Enclose $633.56 in the envelope provided *or*
call (855) 977-1969 to resolve this account.

Dear Niesha,

On 12-18-2015, your Credit One Bank, N.A. account was sold to MIDLAND FUNDING LLC, which is now the sole owner of this debt.

Midland Credit Management, Inc. ("MCM"), a debt collection company, will be collecting on, and servicing your account, on behalf of MIDLAND FUNDING LLC. Your current balance is $633.56.

This account may still be reported on your credit report as unpaid.

. . .

The records associated with the CREDIT ONE BANK, N.A. account purchased by MIDLAND FUNDING LLC, reflect that you are obligated on this account, which is in default. As the owner of this account, but subject to the rights described below, MIDLAND FUNDING LLC is entitled to payment of this account.  All communication regarding this account should be addressed to MCM and not the previous owner.

Unless you notify MCM within thirty (30) days after receiving this notice that you dispute the validity of the debt, or any portion thereof, MCM will assume this debt to be valid.

If you notify MCM, in writing, within thirty (30) days after receiving this notice that the debt, or any portion thereof, is disputed, MCM will obtain verification of the debt or a copy of a judgment (if there is a judgment) and MCM will mail you a copy of such verification or judgment. Write to: 2365 Northside Drive, Suite 300, San Diego, CA 92108; Attn: Consumer Support Services.

If you request, in writing, within thirty (30) days after receiving this notice, MCM will provide you with the name and address of the original creditor.  Write to: 2365 Northside Drive, Suite 3001 San Diego, CA 92108; Attn: Consumer Support Services.

Please remember, even if you make a payment within thirty (30) days after receiving this notice, you still have the remainder of the thirty (30) days to exercise the rights described above.

If an attorney represents you with regard to this debt, please refer this letter to your attorney.  Likewise, if you are involved in an active bankruptcy case, or if this debt has been discharged in a bankruptcy case, please refer this letter to your bankruptcy attorney so that we may be notified.

You are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

(Pl.'s Ex. 1 to the Am. Compl.).

At the bottom of the front of the letter, the Defendant's phone number, website, and address are listed.  The online and mailing options state that the Plaintiff can pay through those avenues.

**B.  Relevant Procedural History**

On January 30, 2017, the Plaintiff commenced this action by filing a complaint.

On April 13, 2017, before filing an answer, the Defendant filed a motion to dismiss pursuant to Rule 12(b)(6).

On April 24, 2017, the Plaintiff, as a matter of right, filed an amended complaint.  *See* FED. R. CIV. P. 15(a)(1)(B) (stating that, inter alia, a "party may amend its pleading once as a matter of course" within 21 days after a motion made pursuant to Rule 12(b)).  The amended complaint alleges that this is a putative class action.

The amended complaint alleges four claims: claims for violations of 15 U.S.C. § 1692e and 15 U.S.C. § 1692g for failure to adequately convey the amount of the debt—specifically, a failure to convey that interest was accruing; and claims for  violations of 15 U.S.C. § 1692e and 15 U.S.C. 1692g(a)(3) based on the letter's alleged misleading language related to disputing the debt.

On April 26, 2017, the Defendant withdrew its initial motion to dismiss.

On June 7, 2017, the Defendant filed the instant motion to dismiss.

## II. DISCUSSION

**A. As to the Defendant's Motion to Dismiss the Complaint**

### 1. The Legal Standard

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Elec., Inc. v. City of N.Y.*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free School Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second Circuit has explained that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009)).

Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679.

## 2. The FDCPA

In 1977, Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

To that end, 15 U.S.C. § 1692e ("Section 1692e") states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692e then provides a list of sixteen non-exclusive examples that constitute violations of the above-prohibition, including as relevant here, "[t]he false representation of . . . the character, amount, or legal status of any debt . . . ," Section 1692e(2)(A); and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," Section 1692e(10).

15 U.S.C. § 1692g ("Section 1692g") requires notices of debt to contain certain details. If those details are not included in the initial communication, they must be communicated within five days of the initial communication. Among the details required by Section 1692g, the debt collector must send a written notice containing "the amount of the debt," *id.* at § 1692g(a)(1), and a statement that the debt will be assumed to be valid by the debt collector unless the consumer disputes the validity of the debt within thirty days of receipt of the communication, *id.* at § 1692g(a)(3). As discussed below, a debtor's dispute need not be in writing pursuant to Section 1692g(a)(3), but if a debtor does dispute the debt in writing, it triggers more rights under Section 1692g.

Reading these provisions together, to establish a violation of the FDCPA, "(1) the plaintiff must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts

to collect a consumer debt, and (2) the defendant collecting the debt is considered a 'debt collector,' and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements." *Polanco v. NCO Portfolio Mgmt., Inc.*, 132 F. Supp. 3d 567, 578 (S.D.N.Y. 2015) (quoting *Plummer v. Atl. Credit & Fin., Inc.*, 66 F. Supp. 3d 484, 488 (S.D.N.Y. 2014)); *see also Aviles v. Wayside Auto Body, Inc.*, 49 F. Supp. 3d 216, 225 (D. Conn. 2014) (same).

"In this Circuit, the question of whether a communication complies with the FDCPA is determined from the perspective of the 'least sophisticated consumer.'" *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)). The least sophisticated consumer standard is "an objective standard, designed to protect all consumers, 'the gullible as well as the shrewd.'" *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) (quoting *Jacobson*, 516 F.3d at 90). According to the Second Circuit, "[t]he standard effectively serves its dual purpose: it (1) ensures the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Clomon*, 988 F.2d at 1320.

Further, "[t]o recover damages under the FDCPA, a consumer does not need to show intentional conduct on the part of the debt collector." *Solomon*, 591 F.3d at 135 (2d Cir. 2010). Rather, "[t]he FDCPA is a strict liability statute, . . . and the degree of a defendant's culpability may only be considered in computing damages." *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 63 (2d Cir. 1993) (internal citations and quotation marks omitted).

### 3. Application to the Plaintiff's Claims

#### a. As to the Plaintiff's Claims Based on the Letter's Alleged Failure to State Whether Interest Was Accruing

The Defendant argues that the Plaintiff's claims for violations of Section 1692g and 1692e based on the letter's failure to state whether interest was accruing must fail because the letter neither states nor implies that interest is accruing. In opposition, the Plaintiff contends that she has alleged that interest is accruing, and that the letter is not clear as to whether interest accrues. The Court finds that the Plaintiff has alleged sufficient facts to state claims under Sections 1692e and 1692g.

The Second Circuit has held that debt collectors are required to disclose to consumers that their balance may increase due to interest and fees. *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 76–77 (2d Cir. 2016). The *Avila* court said that a "statement of an amount due, without notice that the amount is already increasing due to accruing interest or other charges, can mislead the least sophisticated consumer into believing that payment of the amount stated will clear her account." *Id.* at 76.

Here, the Defendant argues that *Avila* is inapplicable because the letter is clear that interest is not accruing. The Court disagrees. First, the Plaintiff alleges that interest was accruing during the relevant period. The Court must accept the Plaintiff's allegations as true at this stage of the litigation. Second, while the letter states that interest and fees are zero at the time the letter was sent, it does not state whether interest would accrue at a later date. This is further clouded by the fact that the letter classifies the amount owed as the "current balance," implying that interest may accrue. The letter does not clearly state that that the Plaintiff could resolve all of her debt if she pays $633.56. Instead, it leaves open the possibility that interest would have accrued during the mailing of payment.

The statement directing the Plaintiff to "[e]nclose $633.56 in the envelope provided *or* call (855) 977-1969 to resolve this account" also allows for two possibilities: either that the Plaintiff could resolve the account by doing either of those options, or that calling the number would resolve the account while paying $633.56 would only pay off her current balance. This means that the collection notice was deceptive and misleading. *See Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996) ("A collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate."). Furthermore, the documents provided by the Defendant related to the Plaintiff's account show that interest accrued on her credit card, and there is nothing to indicate that interest did not accrue once the debt was transferred to the Defendant.

In the Court's view, the Defendant did not meet the minimum standard set out by *Avila*, because the letter does not state when, if ever, the amount owed by the Plaintiff would increase. *See Avila*, 817 F.3d at 77 (holding that a letter is sufficient if the "notice either accurately informs the consumer that the amount of the debt stated in the letter will increase over time, or clearly states that the holder of the debt will accept payment of the amount set forth in full satisfaction of the debt if payment is made by a specified date"). The Court is hard pressed to believe that the Defendant would deem the Plaintiff's account satisfied in full if the Plaintiff paid $633.56 two years after the letter was sent.

The cases cited by the Defendant are also distinguishable. In *Dick v. Enhanced Recovery Co., LLC*, No. 15CV2631RRMSMG, 2016 WL 5678556, (E.D.N.Y. Sept. 28, 2016), the plaintiff "d[id] not allege that non-interest charges and fees were actually accruing at the time [the defendant] listed their amount at $0.00, or that they were going to accrue . . . or that the balance stated in the Letter may increase over time due to interest and fees." *Id.* at *5. The same is true in *Ghulyani v. Stephens & Michaels Assocs., Inc.*, No. 15-CV-5191 SAS, 2015 WL 6503849

(S.D.N.Y. Oct. 26, 2015), in which the Court pointed out that "the[] allegations . . . say nothing about whether interest or fees *could* accrue on [the plaintiff's] debt." *Id.* at *3. Here in contrast, the Plaintiff alleges that "at all relevant times [], the Debt accrued, and was subject to interest . . . [and] late fees." (Am. Compl. ¶¶ 30–31).

Therefore, the Plaintiff has alleged sufficient facts to plausibly plead claims for relief under Sections 1692e and 1692g based on the letter's failure to adequately convey the debt. Accordingly, the Defendant's motion to dismiss those claims pursuant to Rule 12(b)(6) is denied.

### b. As to the Plaintiff's Claims Based on the Letter's Alleged Failure to State that the Plaintiff Could Dispute Her Debt Orally

The Defendant also contends that the Plaintiff's claims based on the letter's purported failure to inform the Plaintiff that she could dispute her debt orally must fail because the letter did not state that she had to dispute the debt in writing. In opposition, the Plaintiff argues that the letter implies that she had to make any challenges to her debt in writing, and that the letter thus violates Sections 1692g(a)(3) and Section 1692e. The Court finds that the Plaintiff cannot state claims for violations of Sections 1692g or 1692e based on the language regarding debt disputes.

A consumer is not always required to dispute a debt in writing. *See* 15 U.S.C. § 1692g(a)(3) (requiring debt collectors to send consumers written notice containing a "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector"); *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 286 (2d Cir. 2013) (holding that while Sections 1692g(a)(4)–(5) and 1692g(b) refer to a consumer's written dispute, no writing is required under section 1692g(a)(3)). However, some disputes do require written notice from the consumer. *See* 15 U.S.C. §§ 1692g(a)(4)–(5) (stating that consumers have the right to have debt collectors obtain verification of the debt or a copy of a judgment, as well as the name and address of original creditor

upon written request); 1692g(b) (stating that upon written notice by the consumer pursuant to Section 1692g(a), a debt collector shall cease collection of the debt until the debt collector mails the verification of the debt, copy of the judgment, or the name and address of the original creditor); *see also Hooks*, 717 F.3d. at 286 ("Sections 1692g(a)(4) and (a)(5) call for affirmative steps on the part of the debt collector, and § 1692g(b) requires the debt collector to cease collection of the debt' unless it complies with several conditions that relate to verifying the debt or judgment in question. Section 1692g(b) thus confers on consumers the ultimate power vis-à-vis debt collectors: the power to demand the cessation of all collection activities. . . .  Debtors can [thus] protect certain basic rights through an oral dispute, but can trigger a broader set of rights by disputing a debt in writing." (internal citations and quotation marks omitted)).

Relevant here, the *Hooks* court agreed with the Ninth Circuit that "its reading—by which some rights can be triggered by an oral dispute, but others require[] a written statement—[does] not mislead consumers . . . ."  *Hooks*, 717 F.3d at 286 (citing *Camacho v. Bridgeport Financial, Inc.,* 430 F.3d 1078, 1082 (9th Cir. 2005)).  That is, the Second Circuit held that the language of the FDCPA does not mislead consumers despite its "complex" scheme and language.  To that end, the Ninth Circuit, whose reasoning the *Hooks* court found to be persuasive, explicitly stated that "[c]ollection notices that include the statute's verbatim language have been held not to be confusing."  *Camacho*, 430 F.3d at 1082.

The disputed language in the Defendant's letter tracks the language of Section 1692g almost verbatim.  The letter informs the debtor that unless the Defendant is informed within thirty days of receipt of the letter that the debt is disputed, it will be presumed valid.  The letter further informs the debtor that if the Defendant is notified within thirty days by writing that the debt is disputed, the Defendant will obtain a verification of the debt or a copy of a judgment; and that if

the debtor requests, in writing, the name and address of the original creditor, it will be so provided. Underneath these paragraphs, the Defendant's phone number is listed.

In *Abramov v. I.C. System, Inc.*, 54 F. Supp. 3d 270 (E.D.N.Y. 2014) (Spatt, J.), this Court found that similar language did not violate the FDCPA. There, the Notice of Debt contained the following language:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.

*Id.* at 273. While the Court took issue with language contained elsewhere, it did recognize that the above referenced language "follows almost verbatim the language of Section 1692g(a)—that is, it does not indicate that a writing is required to contest a debt, but rather only to trigger the debt collector's obligations to obtain and provide . . . verification of the debt." *Id.* at 276. Similarly, other courts in this circuit have found that notices that track the statutory language comply with the FDCPA. *See Kagan v. Selene Fin. L.P.*, 210 F. Supp. 3d 535, 543 (S.D.N.Y. 2016) (citing, *inter alia*, *Sebrow v. NCO Fin. Sys., Inc.,* No. 08–CV–1725, 2009 WL 2707341, at *3 (E.D.N.Y. Aug. 27, 2009); *Nasca v. GC Servs. Ltd. P'shp,* No. 01–CV–10127, 2002 WL 31040647, at *5–7 (S.D.N.Y. Sept. 12, 2002)). Therefore, as the Defendant's letter tracks the statutory language of Section 1692g, which was held by the Second Circuit to not be misleading, it does not violate Section 1692g or Section 1692e. It does not violate Section 1692g because the letter contemplates allowing the Plaintiff to dispute the debt orally, and it does not violate Section 1692e because it is not misleading as to whether a dispute *must* be made in writing.

The Plaintiff asks this Court to follow the reasoning and conclusion of the court in *Vetrano v. CBE Grp., Inc.*, No. CV 15-3185 (JS) (AKT), 2016 WL 4083384 (E.D.N.Y. Aug. 1, 2016).

There, the court found that the phrase "[f]orward written disputes to: Po Box 2635, Waterloo IA 50704-2635" overshadowed and/or contradicted otherwise valid language informing the plaintiff of her right to dispute the alleged debt in ways other than in writing. *Id.* at *9. The *Vetrano* court relied upon the fact that, when the phrases were read together, the plaintiff could be confused as to whether she had to make any disputes in writing. This Court declines to follow *Vetrano* because the decision does not mention the *Hooks* case, in which the Second Circuit stated that consumers are not mislead by the bifurcated scheme of Section 1692g, and cited with approval the Ninth Circuit's decision which held that letters employing the statutory language are not confusing. 717 F.3d at 285–86.

Furthermore, unlike in *Vetrano*, the letter here does not state that debtors should call "only to arrange for payment." 2016 WL 4083384 at *6. Indeed, the Defendant's phone number appears without qualification directly below the statements regarding debt disputes. Next to the phone number, the letter provides the Defendant's website and address where the debtor can pay. This has been held to remove any confusion. *See Kagan*, 210 F. Supp. at 545 ("[T]he Notice conspicuously provides Selene Finance's telephone number immediately following the debt validation disclosures, which further evidences that oral disputes could be made." (citing *Castro v. ARS Nat'l Servs., Inc.,* No. 99–CV–4596, 2000 WL 264310, at *3 (S.D.N.Y. Mar. 8, 2000) ("The collection letter does not require the debtor to notify the collection agency of its dispute in writing. Indeed the letter provides the consumer with the defendant's toll-free telephone number . . . .")) (internal citations to record omitted)).

Nor does the Court find that, when read as a whole, the debt letter is misleading. While the back of the letter encourages debtors to retain several addresses for their records, including an address to which a debtor can mail disputes, it also provides the phone number again and states

that "[t]his does not alter or amend your validation rights as described on the front side of this letter." (Pl.'s Ex. 1 to the Am. Compl.). As stated above, the Defendant's phone number appears directly below the debt validation rights.

Therefore, the Plaintiff cannot sustain claims for violation of Sections 1692g or 1692e, and the Defendant's motion to dismiss those claims pursuant to Rule 12(b)(6) is granted.

### 4. Conclusion

Accordingly, the Defendant's motion to dismiss the Plaintiff's complaint is granted in part, and denied in part. It is granted to the extent that the Plaintiff's claims pursuant to Sections 1692g and 1692e based on the debt dispute statements are dismissed. It is denied to the extent that the Plaintiff's claims pursuant to Sections 1692g and 1692e based on the failure to adequately convey the amount of the debt contain sufficient facts to plausibly state claims upon which relief can be granted.

## B. As to the Defendant's Motion to Compel Arbitration Pursuant to the Federal Arbitration Act

### 1. The Legal Standard

"The FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S. Ct. 1740, 1745, 179 L. Ed. 2d 742 (2011) (internal citation omitted). It exemplifies this country's "strong federal policy favoring arbitration as an alternative means of dispute resolution." *Ragone v. Atl. Video of Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (internal citations omitted); *accord Concepcion*, 563 U.S. at 346; *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 395 (2d Cir. 2015). As a result, "any doubts concerning the scope of the arbitral issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983). The FAA states that "[a] written provision in . . . a

contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2.

It "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 1241, 84 L. Ed. 2d 158 (1985) (emphasis in original). To make the determination of whether arbitration should be compelled, the Court must decide "1) whether the[] [parties] have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *Scott v. JPMorgan Chase & Co.*, 603 F. App'x 33, 35 (2d Cir. 2015) (quoting *Ameriprise Fin. Servs., Inc. v. Beland (In re Am. Express Fin. Advisors Sec. Litig.),* 672 F.3d 113, 128 (2d Cir. 2011) (internal quotation marks omitted)).

Here, the Plaintiff argues that the Defendant cannot establish that there was an agreement to open a credit card account, or that there is a requirement to arbitrate disputes between the parties.

It is Midland's burden to demonstrate that there was an arbitration agreement by a preponderance of the evidence. *See Tellium, Inc. v. Corning Inc.*, No. 03-cv-8487, 2004 WL 307238, at *5 (S.D.N.Y. Feb. 13, 2004); *Crawley v. Macy's Retail Holdings, Inc.*, No. 15-civ.-2228, 2017 WL 2297018, at *4 (S.D.N.Y. May 25, 2017). "[The Court] must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *Concepcion*, 563 U.S. at 333 (internal citations omitted).

As a result, the Court will evaluate the enforceability of the Arbitration Agreement using state contract law. *Cap Gemini Ernst & Young, U.S., LLC v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003); *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 26 (2d Cir. 2002) ("The determination of whether parties have contractually bound themselves to arbitrate a dispute—a determination

involving interpretation of state law—is a legal conclusion."); *DuBois v. Macy's E. Inc.*, 338 F. Appx. 32, 33 (2d Cir. 2009) ("Arbitration clauses are a matter of contract law and, if valid, should be enforced."); *State ex rel. Masto v. Second Judicial Dist. Court ex rel. Cty. Of Washoe*, 125 Nev. 37, 44, 199 P.3d 828, 832 (Nev. 2009).

In deciding whether arbitration should be compelled, the Court will apply "a standard similar to that applicable for a motion for summary judgment," *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (internal citations omitted), considering all relevant admissible evidence and drawing all reasonable inferences in favor of the non-moving party, *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 227 (2d Cir. 2016) (internal citations omitted).

### 2. As to the Defendant's Affidavits

The Defendant provided two affidavits in support of its motion to compel arbitration: one from Vicki Scott ("Scott"), the Vice President of Collections of Credit One Bank, and one from James Collins ("Collins"), the Manager of Media Operations for MCM.

According to Scott's affidavit, Credit One issued a credit card to the Plaintiff and mailed it to her on or about May 2, 2014. Enclosed with the Plaintiff's credit card was Credit One Bank's Visa/Mastercard Cardholder Agreement, Disclosure Statement and Arbitration Agreement (the "Credit Card Agreement" (Def.'s Ex. A to Scott Aff.)). According to the Arbitration Agreement, a consumer agreed to the terms of the Arbitration Agreement by using his or her credit card. On June 22, 2014, the Plaintiff's account number changed, but a new agreement was not sent to the Plaintiff because the Credit Card Agreement still governed the terms of the Plaintiff's account and credit card. The Plaintiff made her last payment on March 27, 2015, and the account was charged off on November 6, 2015. At the time of the charge off, the Credit Card Agreement was still the effective agreement governing the Plaintiff's account.

On or about November 30, 2015, Credit One Bank sold a pool of charged off accounts, including the Plaintiff's account, to one of Credit One Bank's affiliates, MHC Receivables LLC. (*See* Def.'s Ex. C to Scott Aff.). On or about December 14, 2015, MHC Receivables LLC sold all of its rights, titles, and interests in the pool of charged off accounts, which included the Plaintiff's account, to Sherman Originator III LLC ("Sherman"). On or about December 14, 2015, FNBM, another affiliate of Credit One Bank who had purchased receivables associated with several charged off accounts including the Plaintiff's, sold the receivables to Sherman. (*See* Def.'s Ex. D to Scott Aff.).

Collins avers in his affidavit that on or about December 18, 2015, Midland Funding LLC purchased the Plaintiff's charged off credit card account from Sherman. (*See* Def.'s Exs. A–C to Collins Aff.).

Both Scott and Collins asserted that they made their statements after reviewing the business records of their respective companies; that those business records are made in the usual course of business; that the records are made simultaneously or shortly thereafter the events they purport to record; that it is in the usual course of business to make such records; and that such records are made by a person with knowledge of the events the records purport to record.

The Plaintiff contends that Scott's affidavit and the exhibits attached thereto do not meet the requirements of the business record exception codified in Federal Rule of Evidence 803(6). The Court disagrees. Scott accesses and routinely reviews the business records of Credit One Bank, MHC and FNBM, and is therefore a custodian of those records. *See Phoenix Assocs. III v. Stone,* 60 F.3d 95, 101 (2d Cir. 1995) (stating that "[t]he custodian need not have personal knowledge of the actual creation of the document" to lay a proper foundation. (internal citation and quotation marks omitted)). Furthermore, Scott laid the proper foundation for the business

16

records. "To lay a proper foundation for a business record, a custodian or other qualified witness must testify that the document was kept in the course of a regularly conducted business activity and also that it was the regular practice of that business activity to make the record." *United States v. Komasa*, 767 F.3d 151, 156 (2d Cir. 2014). Therefore, the statements made in Scott's affidavit are admissible as exceptions to the rule against hearsay. FED. R. EVID. 803 (stating that statements, including those made pursuant to business records, "are not excluded by the rule against hearsay").

While not explicitly challenged by the Plaintiff, the Court finds that the Collins affidavit and its exhibits similarly meet the requirements of FED. R. EVID. 803(6).

### 3. As to Whether an Agreement Existed

The Plaintiff contends that the Defendant has not met its burden in showing, by a preponderance of the evidence, that an arbitration agreement existed. To that end, the Plaintiff states that the Defendant has neither shown that there was an agreement to open a credit card, or that there was an agreement to arbitrate. The Court finds that the Defendant has demonstrated that both exist.

At the outset, the Court notes that the Arbitration Agreement stipulates that Federal Law as well as Nevada State law apply to any disputes regarding the arbitration provision. There is no conflict between the relevant substantive law of Nevada and New York and so no choice of law analysis is necessary *See McCormick v. Citibank, NA*, No. 15-cv-46, 2016 WL 107911, at *4 (W.D.N.Y. Jan. 8, 2016) ("Since there is no conflict between the relevant substantive law of contracts as applied in these states, however, the court need not engage in a choice of law analysis." (citing, *inter alia*, *Ali v. Fed. Ins. Co.*, 719 F.3d 83, 91 n.12 (2d Cir. 2013) ("Because there is no conflict between the relevant substantive law ..., we dispense with any choice of law analysis.")).

The Plaintiff's amended complaint states that the Plaintiff incurred a debt. Exhibit one to the Plaintiff's amended complaint illustrates that the original creditor was Credit One Bank, N.A. Attached to Scott's affidavit were the Plaintiff's account statements, and the Credit Card Agreement. As stated above, the Plaintiff attempted to rely on those documents in opposition to the Defendant's motion to dismiss. More importantly, these documents, coupled with the statements in Scott's affidavit, demonstrate that there was a valid agreement between Credit One and the Plaintiff. Scott stated in her affidavit that the Credit Card Agreement was mailed to the Plaintiff along with her credit card. Such statements are sufficient proof of mailing. "[S]worn affidavits of corporate officers are sufficient proof of mailing because customary mailing practices, even if proven by circumstantial evidence, can serve to demonstrate that the agreement was actually mailed." *Beattie v. Credit One Bank*, No. 5:15-CV-1315 (LEK/TWD), 2016 WL 4203511, at *3 (N.D.N.Y. Aug. 9, 2016) (citing *Kurz v. Chase Manhattan Bank USA, N.A.*, 319 F. Supp. 2d 457, 463 (S.D.N.Y. 2004) (stating that actual receipt need not be proven, "[p]roof of mailing may be accomplished by presenting circumstantial evidence, including evidence of customary mailing practices used in the sender's business")).

Furthermore, the Plaintiff's credit card account statements and the notice of debt prove that the Plaintiff used the credit card, which under New York and Nevada law constitutes evidence of acceptance of the terms of the Credit Card Agreement. *See Salerno v. Credit One Bank, NA*, No. 15-CV-516-JTC, 2015 WL 6554977, at *4 (W.D.N.Y. Oct. 29, 2015) (collecting cases to support the court's statement that "it is clear under New York law that regular use of a credit card constitutes sufficient evidence of the card user's consent to the terms of the agreement governing the account"); NEV. REV. STAT. ANN. § 97A.140 ("A cardholder shall be deemed to have accepted

the written terms and conditions provided by the issuer upon subsequent actual use of the credit card.").

The Arbitration Agreement, contained as part of the Credit Card Agreement states that "[y]ou and we agree that either you or we may, without the other's consent, require that any controversy or dispute between you and us (all of which are called 'Claims'), be submitted to mandatory, binding arbitration." (Def.'s Ex. A to Scott Aff. at 6).

Therefore, by using the credit card after she received the Credit Card Agreement, the Plaintiff agreed to the terms of the Credit Card Agreement, including the Arbitration Agreement. *Salerno*, 2015 WL 6554977, at *4 (citing *Anonymous v. JP Morgan Chase & Co.,* 2005 WL 2861589, at *4 (S.D.N.Y. Oct. 31, 2005)).

### 4. As to Whether the Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement

The Arbitration Agreement states that the following claims are covered under the agreement:

> disputes relating to the establishment, terms, treatment, operation, handling, limitations on or termination of your account; any disclosures or other documents or communications relating to your account; any transactions or attempted transactions involving your account whether authorized or not; billing, billing errors, credit reporting, the posting of transactions, payment or credits, or *collections matters relating to your account*; services or benefits programs relating to your account, whether or not they are offered, introduced, sold or provided by us; advertisements, promotions, or oral or written statements related to (or preceding the opening of) your account, goods or services financed under your account, or the terms of financing; the application, enforceability or interpretation of this Agreement, including this arbitration provision; and any other matters relating to your account, a prior related account or the resulting relationships between you and us.

(Def.'s Ex. A to Scott Aff. at 6 (emphasis added)).

Relevant here, the Arbitration Agreement also provides that claims subject to arbitration include claims brought by successors.

Such a broad arbitration clause "[creates] a presumption of arbitrability and arbitration [that] even a collateral mater will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (internal citations and quotations omitted).

The Court finds that this case clearly falls within the scope of the Arbitration Agreement. The relevant provision defines "Claims," which according to the Arbitration Agreement may be submitted to mandatory, binding arbitration by either party, as including "collections matters relating to your account." Unquestionably, the Plaintiff's FDCPA claims arise out of the Defendant's attempts to collect the Plaintiff's credit card account debt. In her briefing, the Plaintiff has not advanced any arguments to the contrary. Therefore, the Plaintiff's individual FDCPA claim clearly falls well within the scope of the Arbitration Agreement.

### 5. Stay Pending Arbitration

Having determined that Plaintiff's remaining FDCPA claims are within the scope of and subject to the broad arbitration clause of the Credit Card Agreement, and because the Defendant has requested a stay, section 3 of the FAA mandates that the court "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. As recently recognized by the Second Circuit, a mandatory stay "comports with the FAA's statutory scheme and pro-arbitration policy[,] enables parties to proceed to arbitration directly, unencumbered by the uncertainty and expense of additional litigation, and generally precludes judicial interference until there is a final award." *Katz v. Cellco P'ship,* 794 F.3d 341, 346 (2d Cir. 2015).

Accordingly, the Court finds that the Plaintiff's remaining claims are subject to the arbitration clause in the applicable Credit Card Agreement, and the proceedings in this action must therefore be stayed pending the outcome of arbitration.

**6. Conclusion**

Accordingly, the Defendant's motion to compel arbitration and stay this matter pending arbitration is granted.

### III. CONCLUSION

For the reasons stated above, the Defendant's motion to dismiss the complaint is granted in part and denied in part. It is granted to the extent that the Plaintiff's claims for violations of Sections 1692e and 1692g based on the letter's statements regarding debt disputes are dismissed. It is denied to the extent that the Plaintiff has alleged sufficient facts for the Court to plausibly grant relief on her claims for violations of Sections 1692e and 1692g based on the letter's failure to adequately convey the debt. The Defendant's motion to compel arbitration and stay the proceeding pending arbitration is granted.

Accordingly the Plaintiff is compelled to arbitrate her remaining claims pursuant to the terms of the Arbitration Agreement. The case will remain stayed pending the resolution of arbitration.


**SO ORDERED.**

Dated: Central Islip, New York

November 27, 2017

___/s/ Arthur D. Spatt___

ARTHUR D. SPATT

United States District Judge